## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Marcus Todd, | Case No. 21-cv-00637 (SRN/ECW) |
| Plaintiff, | |
| v. | **ORDER** |
| American Federation of State, County, and Municipal Employees, Council 5, | |
| Defendant. | |

Douglas P. Seaton and James V.F. Dickey, Upper Midwest Law Center, 8421 Wayzata Boulevard, Suite 105, Golden Valley, MN 55426, for Plaintiff.

Jacob Karabell and Leon Dayan, Bredhoff & Kaiser, PLLC, 805 Fifteenth Street, Northwest, Suite 1000, Washington, D.C. 20005; and Josie Doris Hegarty, AFSCME Council 5, 300 Hardman Avenue South, South Saint Paul, MN 55075, for Defendant.

SUSAN RICHARD NELSON, United States District Judge

This matter is before the Court on the Motion to Dismiss [Doc. No. 16] filed by Defendant American Federation of State, County, and Municipal Employees, Council 5 ("the Union"). Based on a review of the files, submissions, and proceedings herein, and for the reasons below, the Court **GRANTS** the motion.

## I.    BACKGROUND

In 1977, the United States Supreme Court ruled that public-sector employers and labor unions representing public-sector employees could, consistent with the First Amendment, compel public-sector employees to contribute to a union's collective bargaining costs even if the employees refused to join the union. *Abood v. Detroit Bd. of*

1

*Educ.*, 431 U.S. 209 (1977).  Approximately forty years later, in *Janus v. American Federation of State, County, and Municipal Employees, Council 31*, __ U.S. __, 138 S. Ct. 2448 (2018), the Supreme Court overruled *Abood* and held that such "fair-share" or "agency" fee arrangements violate employees' First Amendment rights.

Plaintiff Marcus Todd is a security counselor who works for the Minnesota Department of Human Services ("DHS") in St. Peter, Minnesota.  (Compl. [Doc. No. 1] ¶ 10.)  When he began working for DHS in 2014, prior to *Janus*, Todd faced the choice of whether to join the local union organization, the American Federation of State, County, and Municipal Employees ("AFSCME"), Council 5 (the "Union") and pay full membership dues, or decline to join and pay fair-share fees, an arrangement permitted by Minnesota's Public Employment Labor Relations Act ("PELRA"), Minn. Stat. § 179A.06. (Compl. ¶¶ 11, 12, 19.)  Alleging that he joined the Union "against his will," Todd further asserts that his membership "provides no value to him" and he "disagrees with much of [the Union's] political advocacy."  (*Id.* ¶ 18.)  By virtue of signing the Union membership agreement in 2014, Todd authorized his employer, DHS, to deduct Union dues from his paychecks which DHS transmitted to the Union on his behalf.  (*See id.*, Ex. 1 § A.)

Todd contends that in June 2018, the Union or one of its agents forged his signature on a new membership agreement (the "2018 membership agreement").  (*Id.* ¶ 20.) Beginning with his July 6, 2018 paycheck, the Union began deducting dues consistent with the allegedly forged 2018 membership agreement.  (*Id.*)  Two years later, in July 2020, Todd sent the Union written notification in which he resigned his membership and demanded that his dues deductions cease.  (*Id.* ¶ 25.)  Although the Union "processed"

Todd's resignation, it continued to deduct union dues from his paychecks.  (*Id*. ¶ 26.)  The 2018 membership agreement only permitted members to opt out of dues payments during a designated annual period in May.  (*Id*.)  As applicable here, the opt-out date was in May 2021.  (*Id*.)  In August 2020, Todd again wrote the Union, demanding that it cease authorizing dues deductions, and asserted that his signature on the 2018 membership application was forged.  (*Id*. ¶ 27.)  The Union continued deducting dues.  (*Id*.)

In September 2020, Todd's legal counsel wrote to the Union, demanding that it stop authorizing his dues deductions.  (*Id*. ¶ 28; *id*., Ex. 5.)  Legal counsel for the Union responded, expressing the Union's belief that it made proper deductions under the terms of the 2018 membership agreement.  (*Id*. ¶ 29, *id*., Ex. 6.)  Also, the Union observed that it had been making dues deductions pursuant to the 2018 membership agreement for over two years without Todd's objection.  (*Id*.)  Finally, the Union's counsel further advised Todd that he could revoke his authorization for the dues deductions during the next opt-out period between May 6 and May 21, 2021.  (*Id*.)

In March 2021, Todd brought this action against the Union under 42 U.S.C. § 1983, seeking an award of damages "for union dues unlawfully deducted" from his paychecks "without clear and compelling evidence of [his] freely given waiver of First Amendment rights."  (*Id*. ¶ 38.)  Todd's § 1983 claims apply to deductions made during the following periods:  (1) pre-*Janus*, (Count 1); (2) post-*Janus* and prior to his July 2020 Union resignation, (Count 2); and (3) post-resignation, beginning in July 2020 and into the future (Count 3).  Also under § 1983, Todd seeks a ruling that the Union's 15-day opt-out window is unconstitutional (Count 4).  In addition to his federal claims, Todd asserts state law

claims for conversion (Count 5), unjust enrichment (Count 6), civil theft (Count 7), tortious interference with contractual relations (Count 8), and unlawful wage deductions under Minn. Stat. § 181.79 (Count 9).

The Union viewed Todd's filing of this lawsuit as a continuing request to revoke his dues-deduction authorization, and thus instructed DHS to discontinue Todd's dues deductions as of his May 7, 2021 paycheck—the first paycheck within the May 6 through 21, 2021 opt-out period. (Altendorfer Decl. [Doc. No. 19] ¶¶ 3–4.)

The Union now moves to dismiss Todd's claims pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). It argues that his § 1983 claims in Counts 1 and 4 fail because *Janus* is inapplicable to employees who chose to join a union in exchange for receiving the benefits of union membership. (Def.'s Mem. [Doc. No. 18] at 6–10 & n.5; Def.'s Reply [Doc. No. 23] at 1–6.) In addition, although denying that forgery occurred, the Union contends that Todd's claims in Counts 2 and 3 fail because the Union's allegedly illegal conduct in forging a dues-deduction authorization, as Plaintiff alleges, is not "state action"—a necessary element for a § 1983 claim—and the Union is not a state actor. (Def.'s Mem. at 10–15; Def.'s Reply at 7–12.) Further, the Union asserts that because it has stopped authorizing Todd's dues deductions, his claims for prospective relief are now moot. (Def.'s Mem. at 15–16; Def.'s Reply at 12–13.) Finally, if the Court grants the dismissal of Todd's § 1983 claims, the Union moves for the dismissal without prejudice of Todd's supplemental state law claims for lack of jurisdiction. (Def.'s Mem. at 17.)

## II.    DISCUSSION

Relying on Rule 12(b)(1), the Union argues that the portion of Todd's § 1983 claims in Counts 1 through 4 for which he seeks declaratory and injunctive relief must be dismissed because Todd's dues deductions have ended.  (*Id*. at 5 & n.3.)  As to all other forms of relief in Counts 1 through 4, the Union moves to dismiss pursuant to Rule 12(b)(6), arguing that Todd fails to state a claim upon which relief can be granted.  (*Id.*)

### A.    Standard of Review

A court deciding a motion under Rule 12(b)(1) must first determine whether the defendant is mounting a facial attack or a factual attack on the court's subject matter jurisdiction.  *Branson Label, Inc. v. City of Branson*, 793 F.3d 910, 914 (8th Cir. 2015).  If it is a facial attack, the court looks to the pleadings to consider whether the plaintiff has alleged a sufficient basis for jurisdiction and accepts all factual allegations as true.  *See id*.  Conversely, if it is a factual attack, the court may consider "matters outside the pleadings, such as testimony and affidavits."  *Id*. at 914-15 (quoting *Menchaca v. Chrysler Credit Corp*., 613 F.2d 507, 511 (5th Cir. 1980)).  Here, the Union presents a factual attack with respect to Todd's claims for prospective relief because its argument is based on matters outside the pleadings, namely, a declaration regarding the current discontinuation of dues deductions from Todd's paychecks.  (Altendorfer Decl. ¶¶ 4–6.)  The Court will therefore consider this declaration in connection with the portion of the Union's motion that is based on Rule 12(b)(1).

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court accepts the facts alleged in the complaint as true, and views those

allegations in the light most favorable to the plaintiff.  *Hager v. Ark. Dep't of Health*, 735 F.3d 1009, 1013 (8th Cir. 2013).  However, the Court need not accept as true wholly conclusory allegations or legal conclusions couched as factual allegations.  *Id.*  In addition, the Court ordinarily does not consider matters outside the pleadings on a motion to dismiss. *See* Fed. R. Civ. P. 12(d).  Here, the Court properly considers the allegations in the Complaint, along with the exhibits attached to it.

To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although a complaint need not contain "detailed factual allegations," it must contain facts with enough specificity "to raise a right to relief above the speculative level." *Id.* at 555.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555).  Where a motion to dismiss is based on an affirmative defense, the moving party must show that it is entitled to the defense on the face of the complaint.  *Dadd v. Anoka Cty.*, 827 F.3d 749, 754 (8th Cir. 2016).

### B.    Pre-*Janus* Membership Dues (Count 1)

The Court begins with Todd's claim in Count 1 that the Union violated his First Amendment rights by deducting dues from the time of his employment until June 27, 2018, when the Supreme Court decided *Janus*.  The Union argues that dismissal is proper pursuant to Rule 12(b)(6) because *Janus* applies only to non-union employees, not union members like Todd.  (Def.'s Mem. at 9 & n.5; Def.'s Reply at 1–5.)

### 1.   Inapplicability of *Janus* to Union Member

Todd joined the Union upon his hiring in 2014, and for nearly all of the period from his hiring through the issuance of the *Janus* decision, his 2014 initial union membership agreement governed the deduction of dues.  (Compl. ¶¶ 11–13.)  As the Court stated in *Hoekman v. Education Minnesota*, 519 F. Supp. 3d 497, 507 (D. Minn. 2021), *appeal docketed*, No. 21-1372 (8th Cir. Feb. 16, 2021), *Janus* addressed the First Amendment rights of *non-union* members, not those who chose to join the union (and receive the full benefits of membership) rather than pay fair-share fees (without the full benefits of membership).  In fact, in *Janus*, the Supreme Court noted that "[s]tates can keep their labor-relations systems exactly as they are—only they cannot force nonmembers to subsidize public-sector unions."  138 S. Ct. at 2485 n.27.  Thus, as this Court has previously held, "[n]othing in *Janus* suggests that its holding, which expressly pertains to union-related deductions from 'a nonmember's wages,' should apply to similar collections from a union member's wages."  *Hoekman*, 519 F. Supp. 3d at 507 (quoting *Loescher v. Minn. Teamsters Pub. & Law Enf't Emps.' Union, Local No. 320*, 441 F. Supp. 3d 762, 773 (D. Minn. 2020), *appeal dismissed sub nom. Loescher v. Minn. Teamsters Pub. & Law Enf't*, No. 20-1540, 2020 WL 5525220 (8th Cir. May 15, 2020)).

Todd cites three cases in support of his assertion that the Eighth Circuit has "broad[ly] applied" the principles of *Janus* "to people who were not even in a union, much less agency fee payers."  (Pl.'s Opp'n [Doc. No. 22] at 13) (citing *Telescope Media Grp. v. Lucero*, 936 F.3d 740, 750–53 (8th Cir. 2019); *B.W.C. v. Williams*, 990 F.3d 614 (8th Cir. 2021; *Mo. Broadcasters' Ass'n v. Schmitt*, 946 F.3d 453, 463 (8th Cir. 2020) (Stras,

J., concurring)).  He warns that "if this Court holds that *Janus* is limited only to the agency-fee-payer scenario, then it will be at odds with the circuit court."  (*Id.*)

The authority on which Todd relies, however, does not demonstrate that the Eighth Circuit has "broadly applied" *Janus* to facts similar to those alleged here.  In *Telescope Media Group*, 936 F.3d at 750–51, the Eighth Circuit cited *Janus* for general First Amendment principles involving compelled speech, and found that wedding videographers could not be compelled to produce videos of same-sex marriages.  In *B.W.C.*, 990 F.3d at 617–18, the Eighth Circuit rejected a First Amendment challenge to Missouri's religious exemption form for mandatory school immunizations.  Similarly to *Telescope Media Group*,  the court merely cited *Janus* in a general overview of First Amendment principles, and found "little risk" that recipients of the religious exemption form "would believe that the parents were compelled to 'mouth support for views they find objectionable.'"  *Id.* (citing *Janus*, 138 S. Ct. at 2463).  And in Judge Stras' concurrence in *Missouri Broadcasters*, he stated that *Janus* suggests a more exacting legal standard applies to regulations on commercial speech than the lesser protections of the *Central Hudson* standard the majority applied.  946 F.3d at 463–64 (Stras, J., concurring) (citing *Central Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.*, 447 U.S. 557, 563 (1980)).  None of these decisions involved union membership and none support the expansion of *Janus* to a union member like Todd.

Nor is the Court persuaded by Todd's reference to an August 2019 opinion letter from the Alaska Attorney General that broadly interpreted *Janus*.  (Pl.'s Opp'n at 14–15.) Todd  neglects  to  note  that  in  October  2019,  a  state  district  court  enjoined  the

implementation of the opinion letter, concluding that the Attorney General's opinion was incorrect, and ultimately entered summary judgment in favor of the union and against the state. *See Alaska v. Alaska State Emps. Ass'n/AFSCME Local 52*, No. 3AN-19-09971CI, 2019 WL 7597328, at *1–7 (Alaska Super. Ct., 3d Jud. Dist. Oct. 3, 2019), TRO (Oct. 3, 2019), Prelim. Inj. (Nov. 5, 2019), Order Granting Summ. J. (Feb. 8, 2021), *appeal filed* (Alaska Sept. 2, 2021) (No. S-18172).

While Todd frames his decision to become a union member as an unconstitutional choice between "join[ing] the Union and pay[ing] 100% dues," "or pay[ing] [a fair-share] fee of nearly that amount [without joining the Union] and get[ting] no say in [the Union's] misuse of his fee payments," (Compl. ¶¶ 11–12), he does not challenge the mechanics of whether he actually signed the 2014 membership agreement, as he does with the 2018 membership agreement. And Todd acknowledges that he was given a "choice" to join, albeit a Hobson's choice, in his opinion. (*Id.* ¶ 11.) Simply because he wishes that a third option—not joining the Union and paying nothing—had been available to him between 2014 and June 2018 "does not establish coercion." *Hendrickson v. AFSCME Council 18*, 992 F.3d 950, 962 (10th Cir. 2021) (rejecting argument that plaintiff faced a "false dichotomy" of paying union dues or agency fees, as regretting the decision of joining the union did not render voluntary choice nonconsensual) (citing *Belgau v. Inslee*, 975 F.3d 940, 950 (9th Cir. 2020)), *pet. for cert. docketed* (U.S. May 18, 2021) (No. 20-1606). In short, Todd does not plausibly allege that he was compelled to join the Union from his hiring 2014 until the issuance of *Janus* in June 2018.

The Court therefore finds that *Janus* does not afford Todd relief for his § 1983 claim based on pre-*Janus* membership dues he voluntarily agreed to pay.  (*See* Compl. ¶ 11.) This Court and others that have considered a union member's *Janus*-based claims have reached the same conclusion.  *E.g., Hoekman*, 519 F. Supp. 3d at 507; *Hendrickson*, 992 F.3d at 962; *Molina v. Pa. Soc. Serv. Union*, __ F. Supp. 3d__, 2020 WL 2306650, at *7–8 (M.D. Pa. May 8, 2020); *Creed v. Alaska State Emps. Ass'n/AFSCME Local 52*, 472 F. Supp. 3d 518, 525–26 (D. Alaska 2020).

### 2. Defense of Good Faith

In addition, as the Union notes, even if Todd could show that the Union violated his First Amendment rights, pre-*Janus*, his claim for the repayment of back dues "'would still be subject to a good faith defense.'"  (Def.'s Mem. at 9 n.5) (quoting *Hoekman*, 519 F. Supp. 3d at 507).  Private actors, such as the Union, who act in good faith reliance on a state statute and Supreme Court case law upholding the statute's constitutionality have an affirmative defense to § 1983 liability.  *Hoekman*, 519 F. Supp. 3d at 507 (citing *Crockett v. NEA-Alaska*, 367 F. Supp. 3d 996, 1008 (D. Alaska 2019); *Janus v. Am. Fed'n of State, Cty. & Mun. Emps., Council 31; AFL-CIO*, 942 F.3d 352, 364 (7th Cir. 2019) ("*Janus* Remand"); *Danielson v. Inslee*, 945 F.3d 1096, 1098 (9th Cir. 2019), *cert. denied*, No. 19-1130, 2021 WL 231555 (U.S. Jan. 25, 2021); *Lee v. Ohio Educ. Ass'n*, 951 F.3d 386, 389 (6th Cir. 2020), *cert. denied*, No. 20-422, 2021 WL 231559 (U.S. Jan. 25, 2021); *Wholean v. CSEA SEIU Local 2001*, 955 F.3d 332, 334 (2d Cir. 2020); *Diamond v. Penn. State Educ. Ass'n*, 972 F.3d 262, 271 (3d Cir. 2020); *Doughty v. State Emps.' Ass'n of N.H., SEIU*

*Local 1984, CTW, CLC*, 981 F.3d 128, 133 (1st Cir. 2020)); *Brown v. Am. Fed'n of State, Cnty., and Mun. Emps.*, *Council No. 5*, 519 F. Supp. 3d 512 (D. Minn. 2021).

Prior to *Janus*, Todd was free to choose between joining the Union and paying full membership dues, or refusing to join and paying fair-share fees, an arrangement permitted by Minnesota's PELRA, Minn. Stat. § 179A.06, subds. 3 & 6. The Supreme Court's decision in *Abood* supported PELRA's constitutionality. Moreover, there is no plausible allegation here indicating that the Union acted with malice, with the knowledge that PELRA was unconstitutional, or otherwise acted in bad faith when it instructed DHS to withdraw Todd's membership dues from his paychecks between 2014 and June 2018. Therefore, even if *Janus* provided support for Todd's claims related to membership dues deductions during this period, the Union has established a good faith affirmative defense to this claim.

For all of these reasons, the Union's motion is granted as to this claim and the Court dismisses Count 1 with prejudice.

### C.     Post-*Janus* Membership Dues (Counts 2 & 3)

In Counts 2 & 3, Todd asserts claims under § 1983 based on dues deductions made pursuant to the 2018 membership agreement—post-*Janus*, including after Todd had submitted his union resignation letter. (Compl. ¶¶ 58, 69.) He alleges that he did not consent to these deductions because the Union or one of its agents forged his signature on the 2018 membership agreement. (*Id.* ¶¶ 20–22, 56–57, 65.) Further, Todd contends that the Union instructed DHS to make the deductions from his paycheck without clear and

compelling evidence that Todd had voluntarily waived his First Amendment rights, even after he resigned from the Union and informed it of the forged signature.  (*Id*. ¶ 58, 69.)

As noted, the Union contends that these § 1983 claims fail as a matter of law under Rule 12(b)(6) because, even taking Todd's allegations as true, the Union could not have been acting "under color of state law" when it committed this alleged forgery, an illegal activity, and then asked DHS to make the deductions from Todd's paychecks based on a forged signature.  (Def.'s Mem. at 10–15; Def.'s Reply at 7–12.)

Section 1983 provides a remedy for constitutional injuries inflicted by a party who acts under color of state law.  42 U.S.C. § 1983.  To prevail on a § 1983 claim, a plaintiff must establish the following elements:  "(1) violation of a constitutional right, (2) committed by a state actor, (3) who acted with the requisite culpability and causation to violate the constitutional right."  *Shrum ex rel. Kelly v. Kluck*, 249 F.3d 773, 777 (8th Cir. 2001).  Because the statute addresses harms caused by governmental actors, in order to hold a private party liable under § 1983, the requirement for action under color of state law, or "state action," must be satisfied.  *Lugar v. Edmondson Oil Co., Inc*., 457 U.S. 922, 931–32 (1982).  To determine whether a private party qualifies as a state actor, courts consider whether it exercised "powers traditionally exclusively reserved to the State," *Manhattan Comm. Access Corp. v. Halleck*, 139 S. Ct. 1921, 1928–29 (2019), such that the private actor's conduct is "fairly attributable to the state."  *Lugar*, 457 U.S. at 937; *Wickersham v. City of Columbia*, 481 F.3d 591, 597 (8th Cir. 2007).  The Supreme Court  has stated that "very few" functions meet this requirement, but such functions have included, for example,

"running elections and operating a company town." *Manhattan Comm. Access*, 139 S. Ct. at 1928–29.

Whether the conduct at issue is "fairly attributable to the state," involves the application of a two-part test to determine whether the conduct involves (1) a state policy and (2) a state actor. *Roudybush v. Zabel*, 813 F.2d 173, 176 (8th Cir. 1987) (citing *Lugar*, 457 U.S. at 940–41). The state policy component "requires that 'the deprivation must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible.'" *Id.* (quoting *Lugar*, 457 U.S. at 940–41). The state actor component "requires that the defendant [] 'be a person who may fairly be said to be a state actor.'" *Id.* (quoting *Lugar*, 457 U.S. at 937).

### 1.     State Policy

As to whether the conduct here is attributable to a state policy, in the Complaint's general factual allegations, Todd cites PELRA, Minn. Stat. §§ 179A.06, subd. 6, and 179A.20, subd. 1, which permits employers to deduct union dues pursuant to union member agreements, and asserts that the Union and non-party DHS were acting under color of state law when they deducted dues pursuant to an agreement that was signed without a waiver of his constitutional rights. (Compl. ¶¶ 38–39.) In his claim-specific allegations in Counts 2 and 3, Todd does not challenge the state's *general* authority to deduct dues pursuant to a private agreement, nor does he allege that PELRA is unconstitutional. Rather, he alleges that his constitutional harm stems from the Union forging his signature on the 2018 membership agreement and using the forged agreement to authorize dues deductions without his consent, including after he tendered his resignation from the Union. (*Id.* ¶¶

13

56–60, 62–71.)  Thus, the essence of Todd's claim is that he signed a private agreement "without a constitutional waiver of rights."  *See Belgau*, 975 F.3d at 946–47 (finding that claimed constitutional harm was based on a private union membership agreement).

The Supreme Court has held that "private misuse of a state statue does not describe conduct that can be attributed to the State."  *Lugar*, 457 U.S. at 941.  To the extent the Union misused PELRA to obtain union dues based on forgery, as Todd alleges, such conduct cannot be attributable to the state.  In fact, under Minnesota law, the act of forgery is a criminal felony, Minn. Stat. § 609.63, making it "contrary to the relevant policy articulated by the State." *Id*. at 940; *see Roudybush*, 813 F.2d at 177 ("[T]he state, by enacting the criminal statute, has expressly condemned [the conduct in question].").

The Eighth Circuit does not appear to have addressed constitutional claims against a union involving dues deductions made pursuant to a forged union membership application.  However, its decision in *Roudybush*, 813 F.2d at 177, which also involved constitutional claims against private parties, provides guidance here.  In *Roudybush*, the court applied the *Lugar* test to § 1983 claims premised upon conduct that violated state law. *Id.* at 174–76.  The plaintiffs, sureties on a supersedeas bond, brought a § 1983 action against private-party judgment creditors, asserting that the creditors, along with state officials, had unlawfully used Iowa's execution of judgment procedures to take the plaintiffs' property without due process. *Id*.  The Eighth Circuit found the plaintiffs' § 1983 claims failed because "[s]tate policy is not implicated when an injured party claims that a private party has violated a constitutional post-judgment procedural statute in the course of depriving the injured party of his property." *Id.* at 177.  As in *Roudybush*, Todd

14

does not contend that a state statute is unconstitutional. Rather, his focus is on the Union's alleged unlawful conduct in forging his 2018 membership application, which does not implicate state policy.

Courts in other jurisdictions have considered and rejected similar § 1983 claims involving dues deductions made pursuant to allegedly forged membership applications, finding that such conduct fails to meet *Lugar*'s state policy requirement. *See Jarrett v. Marion Cnty.*, No. 6:20-cv-01049-MK, 2021 WL 65493, at *2–3 (D. Or. Jan. 6, 2021) (finding the alleged harm centered around the forgery of the plaintiff's signature on a membership card, not a state statute or policy, and could not be attributed to the state), *report & recommendation adopted*, 2021 WL 233116, at *1 (D. Or. Jan. 22, 2021), *appeal filed*, No. 21-35133 (9th Cir. Feb. 19, 2020); *Zielinski v. Serv. Emps. Int'l Union Local 503*, 499 F. Supp. 3d 804 (D. Or. 2020) (dismissing with prejudice § 1983 claims for failing to meet first prong of *Lugar*, as the alleged harm stemmed from a forged private agreement and not a state policy or statute), *appeal filed*, No. 20-36076 (9th Cir. Dec. 15, 2020); *Schiewe v. SEIU Local 503*, No. 3:20-cv-00519-JR, 2020 WL 5790389, at *2 (D. Or. Sept. 20, 2020) (finding no state policy at issue where the alleged constitutional harm—forgery by the union and consequent faulty authorization of dues withdrawals—was an exclusively private act); *Wright v. SEIU Local 503*, 491 F. Supp. 3d 872, 878 (D. Or. 2020) (holding that first prong of *Lugar* not met where plaintiff alleged that constitutional deprivation resulted from forged union membership and there was no allegation that the state was responsible for the alleged forgery); *Yates v. Wash. Fed. of State Emps.*, 466 F. Supp. 3d 1197, 1204 (W.D. Wash. 2020) (finding no state action where claim was based on forged

membership signature, noting that statute permitting employers to deduct membership dues did not permit unions to forge signatures), *appeal filed*, No. 20-35879 (9th Cir. Oct. 8, 2020).

Consistent with this authority, the Court finds that the constitutional harms alleged in Counts 2 and 3 stem from private acts—the Union's alleged forgery and its continued authorization of dues deductions based on forgery—and not from the exercise of a right or privilege created by the state. *Lugar*, 457 U.S. at 940–41. Minnesota's PELRA permits employers like DHS to deduct union dues from wages, but it does not permit unions to forge signatures on membership agreements in order to obtain union dues. Accordingly, the Court finds that Todd fails to satisfy *Lugar*'s first prong for attributing conduct to the state, which requires that the harm originate from a state policy.

### 2. State Actor

Whether a private party may be characterized as a state actor under *Lugar*'s second prong requires a "close nexus" between not only the state and the private party, "but between the state and the alleged deprivation itself." *Wickersham,* 481 F.3d at 597 (citing *Brentwood Acad. v. Tenn. Secondary Sch. Ath. Ass'n*, 531 U.S. 288, 291 (2001)). Where the private party acts with the state's mere approval or acquiescence, there is no such nexus. *Id*. (citing *Blum v. Yaretsky*, 457 U.S. 991, 1004–05 (1982)). However, where the private party acts together with or obtains significant aid from state officials to further the challenged action, the private entity may be considered a state actor. *Id*. (citing *Lugar*, 457 U.S. at 937).

The state's involvement here was merely to effectuate "the private choice of the parties," in a ministerial payroll processing role that was "neither significant nor coercive." *Belgau*, 975 F.3d at 947.  Neither Minnesota nor DHS participated in the decision to enter into bargained-for agreements, and the signing of a union application, whether forged or genuine, did not involve any state action.  Although Minnesota law permitted DHS to deduct Todd's union dues from his paychecks, *see* Minn. Stat. § 179A.06, subd. 6, Todd fails to allege that the state had any involvement in shaping the terms of the agreement or in facilitating the alleged forged signature.  Accordingly, the Court finds that the Union was not a state actor, as there is no close nexus between the state and the conduct at issue, and the state provided no significant aid in effectuating the alleged forgery and violating Todd's First Amendment rights.  *See Quezambra v. Domestic Workers Local 3930*, 445 F. Supp. 3d 695, 702–05 (D.C. Cal. 2020), *appeal filed*, No. 20-55643 (9th Cir. June 23, 2020) (finding that no allegations suggested that the union's unilateral actions in reporting its membership roll or forging signatures could be attributed to the state).

In sum, Todd fails to meet the two-part *Lugar* test to determine whether a private party meets § 1983's under-color-of-state-law requirement.  Todd does not plausibly allege that the harmful conduct here was attributable to a state policy, nor that the Union can be characterized as a state actor.  *Lugar*, 457 U.S. at 940–41.  Accordingly, the Court grants the Union's Motion to Dismiss Counts 2 and 3 with prejudice.

### D.    Opt-Out Window (Count 4)

As noted earlier, in Count 4 of his Complaint, Todd asserts a § 1983 claim based on the annual 15-day opt-out window in which to terminate dues deductions.  (Compl ¶¶ 74–

81.)  He contends that under *Janus*, in order for an opt-out system to be constitutional, it must allow for immediate opt-out.  (*Id*. ¶ 77.)  Among his requested remedies, Todd seeks injunctive and declaratory relief, allowing him to opt out of the deductions "immediately." (*Id*. ¶ 81.)

The Supreme Court has held, in a case arising under Minnesota law, that when "[t]he parties themselves . . . determine the scope of their legal obligations" and place "self-imposed" restrictions upon themselves, enforcing such agreements does not run afoul of the First Amendment.  *Cohen v. Cowles Media Co*., 501 U.S. 663, 669-70 (1991).  Relying on *Cohen*, the Third Circuit and Tenth Circuit have rejected the same claim Todd makes here—that *Janus* provides union members the right to terminate union dues at any time, regardless of  the specific opt-out provisions of a union membership agreement.  *Fischer v. Gov. of N.J.*, 842 Fed. App'x 741, 752 (3d Cir. 2021), *pet. for cert. docketed* (U.S. June 16, 2021) (No. 20-1751); *Hendrickson*, 992 F.3d at 964 (same).  As the Third Circuit observed, "Changes in decisional law, even constitutional law, do not relieve parties from their pre-existing contractual obligations."  *Fischer*, 842 Fed. App'x at 752 (citations omitted).  This Court rejected a similar argument about opt-out periods in *Hoekman*, 519 F. Supp. 3d at 509–10, and upheld an annual seven-day revocation period, noting that other courts have upheld similar systems, post-*Janus. See, e.g.*, *Fisk v. Inslee*, 759 F. App'x 632, 634 (9th Cir. 2019) (fifteen-day window); *Creed*, 472 F. Supp. 3d at 525 (ten-day window).

Because "the state common law of contracts is a 'law of general applicability,'" a party cannot rely on the First Amendment in order to "disregard promises that would otherwise be enforced under state law." *Fischer*, 842 Fed. App'x at 752. (citing *Cohen*,

501 U.S. at 672).  *Janus* did not nullify Todd's contractual obligations by permitting him to terminate his union dues immediately.  *Id*. at 753 ("Because *Janus* does not abrogate or supersede Plaintiffs' contractual obligations, which arise out of longstanding, common law principles of 'general applicability,' *Janus* does not give Plaintiffs the right to terminate their commitments to pay union dues unless and until those commitments expire under the plain terms of their membership agreements.") (citations omitted).

Todd argues, however, that the opt-out period here was unreasonably short, citing *Lopez v. Union de Trabajadores de la Industria Electrica y Riego*, 392 F. Supp. 3d 263 (D. P.R. 2019), for the proposition that "[a]t least one court has held that a plaintiff can state a Section 1983 claim based on the refusal to process a resignation from a union."  (Pl.'s Opp'n at 18.)  But *Lopez* is inapposite because the plaintiff there had alleged he was required to join the union and pay full membership dues as a condition of his employment. 392 F. Supp. 3d at 276.  Here, however, Todd alleges that he was given the choice of whether to join the Union and pay full membership dues, or remain a non-member, and pay the lower fair-share fees.  (Compl. ¶ 11.)  And again, as noted above, this Court and others have upheld opt-out periods of similar duration to the period at issue here.

For all of the foregoing reasons, the Union's Motion to Dismiss is granted with respect to Count 4, which the Court dismisses with prejudice.

### E.    Claims for Declaratory and Injunctive Relief

Finally, in each of Todd's § 1983 counts, he seeks injunctive and declaratory relief (Compl. ¶¶ 54, 61, 73, 81) to "prevent future violations of his rights" by the Union.  (*Id*. ¶¶ 54, 61, 73.)  However, the Union has since directed DHS to stop the deductions from

Todd's paychecks.  (Def.'s Mem. at 15–16; Altendorfer Decl. ¶¶ 3–4.)  Accordingly, it argues that because there is no real and immediate threat of injury, Todd's claims for prospective relief have become moot and must be dismissed under Rule 12(b)(1).[1]

Rule 12(b)(1) permits a party to move for dismissal of any claim over which the court lacks subject matter jurisdiction.  Fed. R. Civ. P. 12(b)(1).  In order to invoke the Court's jurisdiction over his claims for injunctive and declaratory relief, Todd bears the burden of demonstrating the Court's subject matter jurisdiction.  *See DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006); *Buckler v. United States*, 919 F.3d 1038, 1044 (8th Cir. 2019).  Article III of the Constitution grants courts the authority to adjudicate "Cases" and "Controversies."  U.S. Const., Art. III, § 2.  Thus, in order to invoke federal jurisdiction, a plaintiff must demonstrate standing by suffering an injury that is fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992) (citations omitted).  Furthermore, an actual controversy must exist not only "at the time the complaint is filed," but at "all stages" of the litigation.  *Alvarez v. Smith*, 558 U.S. 87, 92 (2009).

A case becomes moot—and thus, no longer a "Case" or "Controversy" under Article III—"when the issues presented are no longer 'live' or the parties lack a legally cognizable

---

[1]   Todd argues that the Court should not consider the Altendorfer Declaration because it constitutes material outside the pleadings, which may not be considered under Rule 12(b)(6).  (Pl.'s Opp'n at 29 n.7.)  But the Union moves to dismiss Todd's claims for prospective relief pursuant to Rule 12(b)(1).  (Def.'s Mot. [Doc. No. 16] at 1.)  As the Court noted earlier, because the Union presents a factual attack on the Court's jurisdiction, the Court may consider matters outside the pleadings, such the Altendorfer Affidavit, when considering this portion of the Union's motion.  *Branson Label*, 793 F.3d at 914–15.

interest in the outcome." *Chafin v. Chafin*, 568 U.S. 165, 172 (2013) (citation omitted). However, a defendant cannot automatically moot a case simply by changing its conduct once it is sued. *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982). Rather, "a defendant claiming that its voluntary compliance moots a case bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 190 (2000).

Todd argues that the Union's voluntary cessation of the challenged conduct does not render his claims for prospective relief moot because the Union could resume dues deductions once the case is dismissed. (Pl.'s Opp'n at 27) (citing *Knox v. Serv. Emps. Int'l Union*, 567 U.S. 298, 307 (2012); *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983)).

Lisa Altendorfer, the Union's IT and Building Resource Manager, attests that the Union treated the filing of this lawsuit as Todd's continuing request to revoke his dues deduction authorization. (Altendorfer Decl. ¶¶ 1, 3.) Consequently, the Union stopped Todd's dues authorization consistent with the May 2021 opt-out window, as set forth in the 2018 membership agreement. (*Id.* ¶ 4.) Beginning with Todd's May 7, 2021 paycheck, dues have no longer been deducted. (*Id.*) There is no evidence that Todd has rejoined the Union and no risk to Todd that his dues will be deducted in the future unless he chooses to rejoin the Union. In other words, there is no reasonable expectation that Todd will be subject to the same action again. Accordingly, the Court finds his claims for declaratory and injunctive relief are moot. *See Hendrickson*, 992 F.3d at 958 (finding claim for declaratory judgment moot after cessation of dues deductions because such relief "would

21

serve only to announce that the defendants had harmed him but would have no real-world effect.") (citation omitted); *see also Schiewe*, 2020 WL 4251801, at *3–4 (D. Or. July 23, 2020) (holding claims for prospective relief moot where deductions had stopped, notwithstanding plaintiff's forgery allegations); *Mayer v. Wallingford-Swathmore Sch. Dist.*, 405 F. Supp. 3d 637, 641–42 & n.28 (E.D. Pa. 2019) (citing 13 other district court cases finding prospective relief moot when deductions cease).

Defendant's motion is therefore granted in this respect.

### F.    State Law Claims

Subject matter jurisdiction in this case is based on the existence of a federal cause of action.  Jurisdiction over Todd's state law claims rests exclusively on supplemental jurisdiction under 28 U.S.C. § 1367, which confers jurisdiction over state claims that form part of the same "case or controversy" as the federal claims. When a Court has dismissed all of a plaintiff's federal claims over which it has original jurisdiction, it has the discretion to decline to exercise supplemental jurisdiction over the remaining state law claims. 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if— . . . (3) the district court has dismissed all claims over which it has original jurisdiction"); *Wilson v. Miller*, 821 F.3d 963, 970 (8th Cir. 2016).  In deciding whether to exercise supplemental jurisdiction over pendent state law claims, courts consider the factors of judicial economy, convenience, fairness, and comity. *Wilson,* 821 F.3d at 970–71 (citing *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)).  Here, in terms of judicial economy, the Court has dismissed Todd's federal claims

well before trial, and none of the other factors weigh in favor of retaining jurisdiction.

Accordingly, the Court dismisses Todd's state law claims without prejudice.

## III.   CONCLUSION

Based on the submissions and the entire file and proceedings herein, **IT IS**

**HEREBY ORDERED** that

1.   Defendant's Motion to Dismiss [Doc. No. 16] is **GRANTED**.

2.   Counts 1–4 of the Complaint [Doc. No. 1] are **DISMISSED WITH PREJUDICE**.

3.   Counts 5–9 of the Complaint [Doc. No. 1] are **DISMISSED WITHOUT PREJUDICE.**

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: November 10, 2021                              s/Susan Richard Nelson
                                                     SUSAN RICHARD NELSON
                                                     United States District Judge